# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# JONESBORO DIVISION

**JOE WICKER**                                                    **PLAINTIFF**

**v.**                     **No. 3:16-CV-00190-SWW-JTR**

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner,**
**Social Security Administration**                                **DEFENDANT**

## RECOMMENDED DISPOSITION

**I.     Procedures for Filing Objections:**

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Susan Weber Wright. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

**II.    Introduction:**

Joe Wicker ("Wicker") applied for social security disability benefits with an alleged disability onset date of May 13, 2013. (R. at 58). The administrative law judge ("ALJ") held a hearing and denied his application. (R. at 25). The Appeals

---

[1] Berryhill is now the Acting Commissioner and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

Council denied his request for review. (R. at 1). Wicker has now requested judicial review.

For the reasons stated below, the magistrate judge recommends affirming the Commissioner's decision.

### III.  The Commissioner's Decision:

The ALJ found that Wicker had the severe impairments of major depressive disorder in partial remission, anxiety, hypertension, and history of coronary artery disease with bypass surgery in 1997. (R. at 16). The ALJ then found that Wicker's impairments left him with the residual functional capacity ("RFC") to lift and carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for six hours in an eight-hour workday; sit for six hours in an eight-hour workday; push and/or pull 50 pounds occasionally and 25 pounds frequently; understand, remember, and carry out simple job instructions; make judgments in simple work-related situations; respond appropriately to coworkers and supervisors with occasional incidental contact that is not necessary to perform the work; respond appropriately to minor changes in the usual work routine; and have no dealings with the general public. (R. at 17). The ALJ took testimony from a vocational expert ("VE") and found that Wicker could not return to his past relevant work. (R. at 23–24). However, the VE testified that a person of Wicker's age, education, work experience, and residual functional capacity could perform other jobs, such as

night janitor and dishwasher. (R. at 24–25). As such the ALJ held that Wicker was not disabled. (R. at 25).

## IV. <u>Discussion</u>:

Wicker maintains that the ALJ erred in finding that his carpal tunnel syndrome was not severe, finding that his major depressive disorder was in partial remission, finding that Wicker is capable of performing medium work, and failing to give controlling weight to the opinion of Wicker's treating physician.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in

the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

Wicker first argues that his carpal tunnel syndrome is a severe impairment. Wicker argues that he testified to limitations resulting from carpal tunnel syndrome and that his wife noted the problem in a Third Party Function Report. (R. at 40–41, 185). Several factors, however, weigh against Wicker's argument. First, as the Commissioner observes, the record is devoid of any treatment records concerning carpal tunnel syndrome.

More damaging to this argument, however, are Wicker's own testimony and reports. He did not note any trouble using his hands in his own Function Report. (R. at 216). Furthermore, his daily activities include horseback riding and deer hunting. (R. at 215). He is also able to mow his lawn and perform household repairs. (R. at 213). At the hearing, when asked about physical limitations, he stated that he had "[n]one that would actually keep [him] from working, probably." (R. at 39). He testified that he had surgery for his carpal tunnel syndrome and that his hands work well now. (R. at 40). While he testified that he could not lift much weight, he was unable to estimate how much weight he could lift. (R. at 41–42). He testified that he has been spending time building a rabbit cage and hog traps as well as riding his horse. (R. at 45). He hunts deer and traps hogs. (R. at 47).

Overall, Wicker's activities indicate that he has minimal difficulty with his hands, and the sparse evidence to the contrary cannot warrant reversal.

Wicker next contends that the ALJ erred in finding that his major depressive disorder was in partial remission. He maintains that his treating physician felt he was unable to work, that counselors diagnosed him with major depressive disorder, and that his condition is worsening. Wicker fails to point to any evidence suggesting that his condition is worsening. Records from Dyson Psychiatric Care, LLC show that he was diagnosed with major depressive disorder, single episode, partial remission as of April 30, 2014. (R. at 347). At that time, Wicker was noted to have substantially improved since his first visit. (R. at 348). Wicker's treating physician last opined that he was disabled on July 24, 2013. (R. at 274). The undersigned cannot find error where the ALJ has named a severe impairment with the same terminology one of Wicker's treating providers used, especially as there is evidence of improvement.

Next, Wicker argues that he is incapable of performing medium work. He argues that his age, history of bypass surgery, hypertension, and high cholesterol prevent him from maintaining such a level of work. This argument is unavailing. As noted above, Wicker himself testified to no physical limitations on his ability to work and has engaged in activities such as hunting, horse riding, hog trapping, and performing household repairs that contradict any assertion that he has significant

physical limitations. He has provided no evidence of any lifting limit that would prevent him engaging in medium work. His testimony, in fact, suggests that he had previously lifted weights in excess of 50 pounds at times. (R. at 42). The ALJ limited Wicker to lifting 50 pounds occasionally and 25 pounds frequently, and the evidence supports Wicker's ability to do such work.

Finally, Wicker asserts that the ALJ erred by giving little weight to the opinion of Darrell Ragland, M.D., the treating physician who opined that Wicker was completely disabled. (R. at 274). As an initial matter, such a statement is not entitled to significant evidentiary weight, as the question of whether a claimant is disabled is reserved to the Commissioner. *Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010).

Nevertheless, the ALJ still fully considered Dr. Ragland's opinion and found it inconsistent with the evidence. The ALJ noted that mental health professionals had noted improvement and an ability to control his anger in 2014. (R. at 355. 357). The ALJ also noted that a consultative examiner assigned Wicker a Global Assessment of Functioning ("GAF") score of 62, indicating mild symptoms. (R. at 22, 314). Whatever weight an ALJ assigns to a treating physician's opinion, it must be supported by good reason and substantial evidence. *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). In this case, the ALJ provided sufficient reason to give little weight to the treating physician's opinion.

## V. Recommended Disposition:

There is substantial evidence to support the Commissioner's decision that Wicker was not disabled. The ALJ was justified in finding Wicker's carpal tunnel syndrome was not severe, that he had major depressive disorder in partial remission, that Wicker could perform medium work, and that the opinion of Dr. Ragland was entitled to little weight.

DATED this 21st day of April 2017.

_____
UNITED STATES MAGISTRATE JUDGE